

JUN 1 7 2002

*Builders & Construction Managers*

May 29, 2002

Mr. Patrick Russell
IJID, INC.
1000 Julian Lane
Bear, Delaware 19701

RE:    DOVER AIR FORCE BASE MORTUARY
       Nason Construction, Inc., Project No. 4860
       SUBCONTRACT AGREEMENT

Dear Patrick:

Enclosed please find "Subcontract Agreement - #SC486015JJ", for work on the above referenced project. The Subcontract, together with this letter, reflects our full and complete offer to engage your company for this project. Following is a list of Exhibits to the Subcontract:

| Exhibit | Name of Item | Required Signature | Exhibit | Name of Item | Required Signature |
|---------|-------------|-------------------|---------|-------------|-------------------|
|         | Cover Ltr. | Page 1 | E | Safety Site Policy | Page 1 |
| A | Terms and Conditions | Page 5 of 5 | G | Schedule | |
| B | AIA Billing Document | | H | Liquidated Damages | Page 2 |
| C | List of Suppliers | Page 1 | L | Scope of Work | |
|   |             |        | M | Cert. Payroll Form | |

Please review all documents, sign where applicable (including on all of the attached Exhibits) and return both copies to Nason Construction, Inc. within five (5) business days of receipt for our signature. If all of the attached exhibits are not returned fully executed, progress payments cannot be processed. Also, please sign below indicating your receipt of these documents and acceptance of the terms of this letter. A fully executed copy of this Agreement will be sent to you for your records. Be advised that no work shall be performed prior to submittal of a Certificate of Insurance evidencing the insurance coverage specified in Exhibit D. All invoices are to be submitted on the AIA Document Form (Exhibit B), along with your signature and notary seal or payment cannot be processed. Faxed invoices will not be accepted.

Any modification to this Subcontract's offered terms and conditions, material or immaterial, will constitute a counteroffer, which we must accept in writing before it can become effective. Without our written acceptance, no modifications will be in effect. If, for any reason, you commence any work contemplated under this proposed Subcontract without first receiving a copy of the Subcontract signed by an authorized representative of Nason Construction, Inc., you will be considered to have unconditionally accepted this Subcontract without any modifications or additional terms.

Thank you for your cooperation regarding this matter. We look forward to working with you on this project toward a successful completion for all parties involved.

Very truly yours,


Anthony P. Ricciardi, CPE
Director of Preconstruction Services


Authorized Signature - Subcontractor Name


Date

Enclosures
APR/sc

2000 Faulk Road, Suite F   •   Wilmington, DE 19810-3642   •   Tel (302) 529 2800   Fax (302) 529 2808



# NASON CONSTRUCTION, INC., SUBCONTRACT AGREEMENT
(Including Exhibits A, B, C, D, E, G, H, L, M)

## SC # 486015JJ

Job Name: <u>DOVER AIR FORCE BASE MORTUARY</u>

Location & Phone #: <u>Dover Air Force Base, Dover, Delaware</u>

Project Manager/Phone #: <u>BOB MALAGOLI (302) 529-2543</u>

SUBCONTRACTOR'S REPRESENTATIVE: <u>PATRICK RUSSELL</u>

Subcontractor's Phone #: <u>(302) 836-0414</u>

RECEIVED
JUN 0 6 2002

Job No. <u>4860</u>  Acct No.<u>02200</u>

Superintendent: <u>MIKE LANO (302) 229-8048</u>

Subcontractor's Fax #: <u>(302) 836-4275</u>

**THIS AGREEMENT SUPERSEDES PREVIOUS PROPOSALS AND CORRESPONDENCES BOTH VERBAL AND WRITTEN.
ALL MATERIALS MUST BE DELIVERED TO THE ABOVE-REFERENCED JOB SITE**

THIS AGREEMENT MADE THIS <u>17th</u> day of <u>May, 2002</u>, by and between NASON CONSTRUCTION, INC., a Pennsylvania Corporation, hereinafter referred to as the CONTRACTOR, and <u>JJID, INC., 100 Julian Lane, Bear, Delaware 19701,</u>

hereinafter referred to as the SUBCONTRACTOR,

WITNESSETH:

1.  The SUBCONTRACTOR does hereby convenant, promise and agree for the total sum of <u>EIGHTY HUNDRED THIRTY THREE THOUSAND FIVE HUNDRED SEVENTY DOLLARS ($833,570.00),</u> to furnish all labor, materials, tools, equipment, supplies, and any other items necessary or incidental to the performance of the following:

### SEE EXHIBIT L FOR SITEWORK SCOPE OF WORK.

(hereinafter referred to collectively as the WORK).

SUBCONTRACTOR agrees that it will remove all debris or rubbish caused by it or its personnel on a daily basis from the Project site or to a dumpster provided by CONTRACTOR, and will pay for any breakage or other damage caused by them; in the absence of which, CONTRACTOR may remove said debris and rubbish and replace property so broken or damaged and charge the cost thereof to the SUBCONTRACTOR.

2.  Subcontract Dates:
    Submission of Shop Drawings/Submittals/Samples within <u>(*)</u> days of the date of this Contract.

    Fabrication Commence      <u>(*)</u>
    Fabrication Complete      <u>(*)</u>
    Project Substantial Completion   <u>(*)</u>

    Erection and/or Installation Commence <u>(*)</u>
    Erection and/or Installation Complete ___ <u>(*)</u>

    **(*) SEE EXHIBIT G, SCHEDULE**

    The exceptions (if any) from WORK are: **SEE EXHIBIT L.**

4.  This SUBCONTRACT is based upon the following documents (include all dates): **SEE EXHIBIT L.**



RECEIVED

J 1 7 2002

NASON CONSTRUCTION

5.  SUBCONTRACTOR shall submit a written request for a Change Order within ten (10) days after the first occurrence of the event giving rise to the claim which is the subject of such request, whether for extra work, an extension of time or otherwise. Change Orders not submitted within such time period will be invalid and will be considered waived. No additions, deductions or other changes shall be made in the WORK, nor shall there be charges for premium time, except upon prior written order of CONTRACTOR, and when properly authorized such additions only shall be invoiced at the allowable mark-up of 5% for overhead and 10% for profit. All time and material additions to the WORK must be invoiced in accordance with Article 6 below and shall include the extra work order therefor signed by CONTRACTOR'S Superintendent and OWNER'S representative, if applicable. The signature of CONTRACTOR'S Superintendent only verifies the quantity of the work therein and does not indicate acceptance by CONTRACTOR of a modification of the sum of this SUBCONTRACT.

6.  Payments will be made on the basis of INVOICES WHICH ARE TO BE SUBMITTED IN DUPLICATE ON OR BEFORE the 25th of each month on the AIA Form G702/G703, representing the value of labor performed and/or material installed (or properly stored if permitted by the PRINCIPAL CONTRACT) as of the end of the period covered by such invoice. When the CONTRACTOR'S invoice therefore has been approved and payment is received from the OWNER, payment of the approved amount of SUBCONTRACTOR'S invoice will be made to the SUBCONTRACTOR within five (5) working days of the CONTRACTOR'S receipt of payment therefor on the basis of 90% of the approved amount of such invoice. Invoices received after the 25th of the month will be processed for payment the following month. The retainage of 10%, as aforesaid, will be withheld until such time(s) as the OWNER and architect reduce the retainage for the Project with respect to the WORK. Within ten (10) days after the CONTRACTOR'S receipt of the funds represented by any such reduction and provided the SUBCONTRACTOR has properly completed 50% of its WORK in accordance herewith, and has otherwise complied with the provisions hereof, a proportionate reduction in retainage will be made to the SUBCONTRACTOR to the extent attributable to it.

ACCEPTED SUBJECT TO ALL OF THE TERMS, CONDITIONS AND EXHIBITS SET FORTH ABOVE AND ON ADDITIONAL PAGES HEREOF.

ALL OF THE TERMS AND CONDITIONS AND EXHIBITS SET FORTH ABOVE AND ON ADDITIONAL PAGES HEREOF ARE PART OF THIS SUBCONTRACT.

SUBCONTRACTOR: _James J. Julian / JJID, INC._

NASON CONSTRUCTION, INC.

By: _James J. Julian, V.P._
        (Title)

By: _____  7/26/
        ROBERT V. MALAGOLI, DIRECTOR OF PROJECTS

ATTEST: _____

ATTEST: _____

DATE: _6-14-02_

DATE: _7/26/02_

PLEASE SIGN THE AGREEMENT, EXHIBIT A, "GENERAL TERMS AND CONDITIONS", ALONG WITH ALL OTHER EXHIBITS REFERENCED ABOVE AND RETURN TO NASON CONSTRUCTION, INC.

INTERNAL DISTRIBUTION:    File    Acct.    PM    Estimator    Superintendent
01/01

NASON



Exhibit A, "General Terms and Conditions"
for Nason Construction, Inc.'s Subcontract Agreement

1.  Work performed by SUBCONTRACTOR shall be in strict accordance with the Agreement, Conditions (General, Special, Supplementary, or Other), Plans, Specifications, Drawings, Bulletins, Attachments, Exhibits, Addenda and all other related documents (hereinafter collectively called "CONTRACT DOCUMENTS"), all of which form a part of the contract between CONTRACTOR and OWNER for the Project (hereinafter referred as "PRINCIPAL CONTRACT") and hereby become a part of this SUBCONTRACT as if fully set forth herein at length or attached hereto. SUBCONTRACTOR shall be bound by all provisions of the PRINCIPAL CONTRACT, as far as applicable to this SUBCONTRACT and the WORK, and shall assume toward the CONTRACTOR and the OWNER, where appropriate, all of the obligations and responsibilities concerning the SUBCONTRACT and the WORK that the CONTRACTOR assumes by the PRINCIPAL CONTRACT towards the OWNER. Where specific WORK, as set forth in the CONTRACT DOCUMENTS is not described in this SUBCONTRACT, SUBCONTRACTOR shall irrespectively perform all WORK normally construed to come within the scope of its activities, as required of the CONTRACTOR under the PRINCIPAL CONTRACT. All WORK shall be performed to the complete satisfaction of the CONTRACTOR, and Architect and OWNER.

2.  FOR WORK PERFORMED IN PENNSYLVANIA: THE SUBCONTRACTOR, FOR ITSELF, HEREBY COVENENTS AND AGREES NOT TO FILE ANY LIENS OR TO MAKE ANY CLAIMS AGAINST THE PREMISES OR ANY PART THEREOF OR AGAINST ANY IMPROVEMENTS ERECTED THEREON, AND FURTHER CONVENANTS TO RELEASE AND HEREBY DOES RELEASE THE PREMISES UPON WHICH THE PROJECT IS LOCATED AND EACH AND EVERY PART THEREOF AND ANY AND ALL BUILDINGS THAT MAY NOW OR THEREAFTER BE ERECTED THEREON, FROM ANY AN EVERY LIEN, CHARGE OR CLAIM OF ANY NATURE WHATSOEVER THAT IT MIGHT OTHERWISE AT ANY TIME HAVE AGAINST THE SAME OR ANY PART THEREOF, FOR WORK DONE OR TO BE DONE OR MATERIALS FURNISHED OR TO BE FURNISHED OR UPON ANY OTHER GROUND WHATEVER GROWING OUT OF OR IN ANY WAY CONNECTED WITH OR IN RELATION TO THE ERECTION AND CONSTRUCTION OF ANY BUILDING, STRUCTURES AND/OR IMPROVEMENTS UPON THE SAME PREMISES.

    FOR WORK PERFORMED OUTSIDE PENNSYLVANIA: TO THE EXTENT PAYMENT FOR WORK IS RECEIVED, SUBCONTRACTOR, FOR ITSELF AND ITS SUBCONRACTORS AND SUPPLIERS, HEREBY CONVENANTS NOT TO FILE ANY LIENS OR TO MAKE ANY CLAIMS AGAINST THE PREMISES OF ANY PART THEREOF OR AGAINST ANY IMPROVEMENTS ERECTED THEREON, AND FURTHER CONVENANTS TO RELEASE AND HEREBY DOES RELEASE THE PREMISES UPON WHICH THE PROJECT IS LOCATED AND EACH AND EVERY PART THEREOF AND ANY AND ALL BUILDINGS THAT MAY NOW OR HEREAFTER BE ERECTED THEREON, FROM ANY AND EVERY LIEN, CHARGE OR CLAIM OF ANY NATURE WHATSOEVER THAT IT MIGHT OTHERWISE AT ANYTIME HAVE AGAINST THE SAME OR ANY PART THEREOF, FOR WORK DONE OR TO BE DONE OR MATERIALS FURNISHED OR TO BE FURNISHED OR UPON ANY OTHER GROUND WHATEVER GROWING OUT OF OR IN ANY WAY CONNECTED WITH OR IN RELATION TO THE ERECTION AND CONSTRUCTION OF ANY BUILDING, STRUCTURES AND/OR IMPROVEMENTS UPON THE SAME PREMISES.

    IN ADDITION TO THE ABOVE, SUBCONTRACTOR SHALL REQUIRE EACH OF ITS SUBCONTRACTORS, AND ALL OTHER PARTIES ACTING THROUGH OR UNDER IT TO COMPLY WITH THE IMMEDIATELY PRECEDING PARAGRAPH.

    IN THE EVENT THAT ANY PAYMENT DUE CONTRACTOR UNDER THE PRINCIPAL CONTRACT IS DELAYED BY REASON OF SUBCONTRACTOR FILING OR ASSERTING A CLAIM, STOP NOTICE OR LIEN AGAINST THE OWNER, PROJECT, OR CONTRACTOR, SUBCONTRACTOR AGREES TO ASSUME THE ENTIRE RESPONSIBILITY AND LIABILITY FOR, AND TO INDEMNIFY AND SAVE HARMLESS THE OWNER AND CONTRACTOR FROM ANY LOSS, EXPENSE, INCLUDING ATTORNEY'S FEES, DAMAGES, OR INJURIES CAUSED OR OCCASIONED, DIRECTLY OR INDIRECTLY BY SUCH FILING OR ASSERTION.

3.  This SUBCONTRACT between CONTRACTOR and SUBCONTRACTOR shall be deemed to be accepted by SUBCONTRACTOR if it commences the WORK hereunder or when accepted by SUBCONTRACTOR in writing, whichever occurs first. This SUBCONTRACT shall become the exclusive agreement between the parties, and all prior representations or agreements, whether written or oral, not incorporated herein, are hereby superseded.

4.  SUBCONTRACTOR shall procure and maintain at its own expense full insurance to protect himself and CONTRACTOR in insurance companies satisfactory to CONTRACTOR. Such policies must provide at least the following types and amounts of insurance:

    a.  WORKERS COMPENSATION INSURANCE to protect SUBCONTRACTOR'S employees in accordance with the statutory requirements of the state(s) involved, including coverage under any applicable Federal (U.S. Longshoreman and Harbor Workers Act, Jones Act, etc.), state and local laws.

    b.  EMPLOYERS' LIABILITY: $100,000 bodily injury each accident, $500,000 bodily injury by disease – policy limit, $100,000 bodily injury by disease – each employee.



c.  COMPREHENSIVE GENERAL LIABILITY (1973 Edition), including Independent Contractors, Products, Completed Operations, Explosion, Collapse & Underground ("X", "C", & "U") Hazards; (1) Broad Form Contractual Liability; (1) Personal injury Hazards A, B, & C (Exclusions "C" deleted); (1) Broad Form Property Damage including Completed Operations; and (1) Broad Form Comprehensive Liability Endorsement. (1) the above may be included in the Board Form Comprehensive Liability Endorsement. Bodily Injury and Property Damage Combined Single Limit: $1,000,000 each occurrence; $1,000,000 aggregate OR

COMMERCIAL GENERAL LIABILITY (1986 Edition): Occurrence Form including Independent Contractors, Products, Completed Operations, Explosion, Collapse & Form Contractual Liability; Personal Injury, Broad Form Property Damage including Completed Operations, Aggregate Limits per Project Endorsement (CG2503).

Note: all of the above except Endorsement No. CG2503 are usually incorporated into the basic coverage form and should not be excluded by Endorsement.

LIMITS OF LIABILTIY

| | | | |
|---|---|---|---|
| General Aggregate | $2,000,000 | Fire Damage (any one fire) | $50,000 |
| Products & Completed Operations Aggregate | $1,000,000 | Medical Expense (any one person) | $ 5,000 |
| Personal & Advertising Injury | $1,000,000 | Each Occurrence | $1,000,000 |

d.  COMPREHENSIVE AUTOMOBLE LIABILITY covering all owned, hired and non-owned vehicles:
      Bodily Injury & Property Damage Combined Single Limit: $1,000,000 each accident.

e.  UMBRELLA LIABILITY - $2,000,000 each occurrence; $2,000,000 aggregate.

f.  In the event the PRINCIPAL CONTRACT requires higher limits of insurance than those set forth above, SUBCONTRACTOR shall comply with the increased insurance requirements set forth in Exhibit "D" attached hereto.

g.

REQUIRED CERTIFICATES OF INSURANCE MUST BE FILED WITH NASON CONSTRUCTION, INC., PRIOR TO COMMENCEMENT OF ANY WORK HEREUNDER. SUCH CERTIFICATES MUST INCLUDE THE AMOUNTS OF INSURANCE SET FORTH ABOVE AND REQUIRED HEREIN. NASON CONSTRUCTION, INC., MUST BE NAMED AS AN ADDITIONAL INSURED ON ALL LIABILITY POLICIES. THE OWNER AND ANY OTHER ENTITIES MUST ALSO BE INCLUDED AS AN ADDITIONAL NAMED INSURED ON ALL LIABILITY POLICIES IF REQUIRED BY THE CONTRACT DOCUMENTS. CERTIFICATES MUST CONTAIN THE PHRASE "FOR ALL WORK PERFORMED FOR NASON CONSTRUCTION, INC.," AND SHALL BE ON A FORM SATISFACTORY TO CONTRACTOR AND ESTABLISH THAT ALL THE INSURANCE COVERAGES REQUIRED HEREUNDER ARE IN FORCE AND PRIMARY AND THAT IN THE EVENT OF CANCELLATION OR CHANGE IN THE COVERAGES LISTED ON THE INSURANCE POLICY, THIRTY (30) DAYS PRIOR WRITTEN NOTICE BY CERTIFIED MAIL OF SUCH CANCELLATION OR CHANGE SHALL BE GIVEN TO CONTRACTOR. *JUID is not responsible for permits or inspecting*

5.  The SUBCONTRACTOR shall obtain and pay for all permits, inspections, licenses and fees relating to the WORK. The SUBCONTRACTOR shall prepare and submit to the CONTRACTOR such drawings, details, samples, etc., as may be required; provided, however, it shall not be incumbent upon the CONTRACTOR to discover any mistakes, errors or deviations therein from the requirements of the CONTRACT DOCUMENTS, and the CONTRACTOR'S approval shall not relieve SUBCONTRACTOR from responsibility or liability for such mistakes, errors or deviations.

SUBCONTRACTOR shall verify all field conditions, lay out and site logistics. SUBCONTRACTOR shall be responsible for all cutting, patching, and fitting in of new and/or existing work required to install any element of SUBCONTRACTOR'S WORK. The cutting, patching and fitting shall be performed by mechanics skilled and experienced in the installation of the materials cut, fit or patched. Such cutting, patching and fitting includes attendant excavation and backfill. *Delay must be the fault of JUID*

6.  SUBCONTRACTOR shall promptly commence WORK following the CONTRACTOR'S order to do so and shall promptly supply sufficient materials, personnel and equipment to maintain the progress of the WORK to the satisfaction of CONTRACTOR and perform the same at such times and places as designated by CONTRACTOR. In The event the SUBCONTRACTOR, in the sole judgment and opinion of the CONTRACTOR, delays the progress or performance of the WORK or otherwise fails to perform any of the provisions of this SUBCONTRACT, or if it should make a general assignment for the benefit of its creditors, or if a receiver should be appointed on account of its insolvency or inability to meet its obligations, or be otherwise incapable of performing under this SUBCONTRACT, CONTRACTOR shall have the right to cancel this SUBCONTRACT upon three working days' written notice mailed by Certified Mail, telegram or delivered to SUBCONTRACTOR at its last known address. In case of such termination, CONTRACTOR may take possession (and for this purpose, SUBCONTRACTOR does hereby assign title thereto) of all of the materials, tools, supplies, machinery and equipment of SUBCONTRACTOR on the Project site and of all items of WORK not delivered to the Project site, in whatever form, and finish the WORK by whatever method CONTRACTOR may deem expedient and SUBCONTRACTORS shall not be entitled to receive any further payments under this SUBCONTRACT until the performance of the PRINCIPAL CONTRACT has been completed by CONTRACTOR and accepted by OWNER.



at which time, if the unpaid balance due SUBCONTRACTOR hereunder exceeds the cost of completion (including overhead and profit), plus other costs, damages and expenses (including, but not limited to attorneys' fees) as CONTRACTOR may suffer or incur by reason of SUBCONTRACTOR'S acts or omissions, said amount shall be paid to SUBCONTRACTOR in full satisfaction and release of any and all claims of SUBCONTRACTOR under this SUBCONTRACT; provided, however, that in the event said damages, costs and expenses exceed such unpaid balance, then SUBCONTRACTOR (a) agrees that it is not entitled to any further payments hereunder, or for any other claims it may have under this SUBCONTRACT, but on the contrary, (b) agrees to assume entire responsibility and liability for and to reimburse, indemnify and save harmless the CONTRACTOR from any excess damages, costs and expenses which shall include any and all costs, expenses and damages incurred through the default of SUBCONTRACTOR (including CONTRACTOR'S normal mark-ups for overhead and profit thereon), as well as damages for delay or otherwise. Time of completion of the WORK under this SUBCONTRACT is of the essence.

7.  In the event that SUBCONTRACTOR should delay the progress of the WORK so as to cause any damage or loss for which CONTRACTOR may become liable, including costs and expenses incurred which shall be directly related to the Project, SUBCONTRACTOR shall indemnify CONTRACTOR for all such damages or losses and such other damages, liquidated, penal, or otherwise which might be assessed against or suffered or sustained by the CONTRACTOR under the PRINCIPAL CONTRACT or otherwise as a result thereof.

8.  To the fullest extent permitted by law, SUBCONTRACTOR shall indemnify, defend and hold harmless the OWNER, Architect and the CONTRACTOR and all of their agents, employees and affiliates, from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use therefrom, arising out of , resulting from or caused by, any acts or omissions of SUBCONTRACTOR, or any of its subcontractors, suppliers, officers, agents, employees or servants, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided however, that SUBCONTRACTOR'S duty hereunder shall not arise if such claims, damages, losses and expenses are caused by the sole negligence of a party indemnified hereunder.

SUBCONTRACTOR'S obligation hereunder shall not be limited by the provisions of any Workers' Compensation Acts, disability benefits acts or other employee benefits acts or similar statutes.

9.  The SUBCONTRACTOR further agrees that this SUBCONTRACT and the SUBCONTRACTOR are subject to the approval of the Architect and/or OWNER, and in the event the OWNER and or Architect do not approve same, the SUBCONTRACT shall become null and void without any further liability by either party.

10. SUBCONTRACTOR agrees (a) that it will not assign the SUBCONTRACT or any moneys due it, or to become due it hereunder, or sublet any portion of the WORK without first obtaining written consent of the CONTRACTOR, and (b) that CONTRACTOR shall have the right to set off against any moneys due SUBCONTRACTOR under this SUBCONTRACT any claim or claims against SUBCONTRACTOR, whether arising under the SUBCONTRACT, or any other subcontract(s) or agreements between the parties hereto.

11. All work, materials, supplies, machinery, tools, equipment and other articles of the SUBCONTRACTOR shall be protected by the SUBCONTRACTOR at its own expense against deterioration, loss, theft, damage and injury and the SUBCONTRACTOR (and not the CONTRACTOR) shall be responsible so far as the SUBCONTRACTOR'S WORK is concerned for all materials delivered and work performed until completion and final acceptance of all of the Work under the PRINCIPAL CONTRACT.

12. CONTRACTOR may, if it so elects, require that the SUBCONTRACTOR, as a condition precedent to making any partial or final payment hereunder, furnish to CONTRACTOR certificate(s) of insurance, list(s) of suppliers; and furnish all necessary warranties/guarantees, release, lien waivers, affidavits and any other documents required by CONTRACTOR. This includes, but is not limited to, any documents required by CONTRACTOR to determine that no unpaid claims exist against SUBCONTRACTOR in connection with the WORK performed by it hereunder and to further keep OWNER'S premises free from liens or claims for liens of all materialmen, subcontractors, or laborers with respect thereto. Acceptance of final payment by SUBCONTRACTOR shall be a full and complete release and discharge of CONTRACTOR and OWNER hereunder. No payment, including final payment, shall be construed to be an acceptance by CONTRACTOR of defective WORK.

13. CONTRACTOR may retain any payments due SUBCONTRACTOR hereunder, which it is authorized (but not obligated) to apply in payment for all labor, materials, equipment, services and other charges incurred by SUBCONTRACTOR in connection with the performance of this SUBCONTRACT, and said funds or the balance thereof shall not be payable to SUBCONTRACTOR until all such obligations have been satisfied in full.

14. Unless a longer period is provided in the CONTRACT DOCUMENTS, SUBCONTRACTOR hereby guarantees the WORK hereunder against all defects which may develop within one year from the date of acceptance by OWNER, or within the guarantee period set forth in the CONTRACT DOCUMENTS, whichever is longer. Pursuant to such guarantee, SUBCONTRACTOR agrees to promptly repair and/or replace, as CONTRACTOR may require, without charge to CONTRACTOR, any and all defective workmanship, materials, equipment and WORK; and to pay all costs, including labor charges, in connection with such repairs and/or replacements; and, to remedy any defects latent or patent, except those due to ordinary wear and tear. SUBCONTRACTOR shall, in any event, pay for all damage to the property of the OWNER resulting from any defects in the WORK, including damages and all costs and expenses to remove, replace and/or repair the WORK and any other work which may be damaged in removing or repairing the WORK. All guarantees and warranties herein provided shall extend to OWNER or other awarding authority and CONTRACTOR.



15. The CONTRACTOR will not provide any special hoist or elevator service for raising of any personnel or materials with respect to the WORK hereunder.

16. In the event of the termination of the PRINCIPAL CONTRACT between CONTRACTOR and the OWNER, this SUBCONTRACT shall also be terminated upon written notice from CONTRACTOR to SUBCONTRACTOR, and, in such a case, CONTRACTOR shall only be liable hereunder to SUBCONTRACTOR for WORK performed and for material and equipment ordered by SUBCONTRACTOR hereunder for the Project up to the date of receipt of such written notice of termination, but only to the extent SUBCONTRACTOR is liable for same and the OWNER is liable therefor to the CONTRACTOR.

17. In the event that the PRINCIPAL CONTRACT provides for the arbitration of any or all claims, disputes or other matters in questions between the OWNER and CONTRACTOR thereunder, or with respect thereto, then all claims, disputes and other matters in questions arising out of or relating to this SUBCONTRACT, or the breach thereof, shall be decided by arbitration in the same manner and under the same procedure as provided in the PRINCIPAL CONTRACT with respect to claims, disputes or other matters in questions between the OWNER and CONTRACTOR. SUBCONTRACTOR hereby agrees that CONTRACTOR shall have the right to include SUBCONTRACTOR, by consolidation, joinder or in any manner, in any arbitration proceedings involving the OWNER, irrespective of whom originally initiated such proceedings. The foregoing agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Pending determination, there shall be no work stoppage hereunder.

Should the PRINICAL CONTRACT not provide for arbitration, all claims, disputes or other matters between CONTRACTOR and SUBCONTRACTOR shall be determined by court of law.

18. No discrimination shall be made against any employees, or in the employment of applicants, because of age, sex, race, religion, color, creed, or national original or otherwise SUBCONTRACTOR shall be responsible to the CONTRACTOR for compliance with all applicable Federal, State, municipal and local rules, regulations or ordinances.

19. The SUBCONTRACTOR shall be responsible to the CONTRACTOR for compliance with all applicable safety and health laws, rules and regulations promulgated by the Federal, State and municipal governments, and all political subdivisions thereof, arising out of or relating to SUBCONTRACTOR'S performance of WORK in connection with this Project. SUBCONTRACTOR shall indemnify the CONTRACTOR for any and all damages, costs and expenses incurred by the CONTRACTOR for fines, penalties and corrective measures resulting from acts of commission or omission by SUBCONTRACTOR, its subcontractors and suppliers, and its and their agents and employees resulting from SUBCONTRACTOR'S failure to comply with such safety and health laws, rules and regulations.

Special attention is called to the Occupational Safety and Health Act ("OSHA"), including the OSHA Hazard Communication Standard.

20. SUBCONTRACTOR, for the price provided in this SUBCONTRACT, hereby accepts and assumes exclusive liability for, and shall save CONTRACTOR harmless against the payment of all contributions, taxes or premiums which may be payable under the unemployment insurance laws of any state, under the Federal Social Security Act, or under any tax laws or regulations promulgated by the Federal, State and municipal governments, and all political subdivisions thereof, measured upon the payroll or income of employees, by whomsoever employed, engaged in the performance of the WORK included in the SUBCONTRACT and all Sales, Use or other taxes levied or assessed against OWNER, CONTRACTOR or SUBCONTRACTOR, arising out of the WORK, including, but not limited to, taxes on any kind of materials, articles or equipment. SUBCONTRACROR further agrees to indemnify, defend and hold harmless CONTRACTOR and OWNER from any liability for taxes or premiums which may imposed by any Federal, State or municipal government, and any political subdivision thereof arising out of, or related to, SUBCONTRACTOR'S failure to obtain any necessary licenses or permits. CONTRACTOR may also, in its sole discretion, request production of evidence satisfactory to it by SUBCONTRACTOR that all obligations contained in the within Paragraph have been satisfied and/or paid in full as a condition to making any payment hereunder, whether final or otherwise hereunder.

21. In the event CONTRACTOR shall delay or suspend the commencement or execution of the whole or any part of the WORK, or vary the sequence of performance thereof, then the sole remedy of SUBCONTRACTOR with respect to such delay or suspension shall be an extension of time for SUBCONTRACTOR in completing its WORK under this SUBCONTRACT for a period equal to that of such delay or suspension.

22. If the SUBCONTRACTOR defaults or neglects to carry out or perform the WORK or any portion thereof in accordance with the SUBCONTRACT and fails within three (3) working days after receipt of written notice from CONTRACTOR to commence and continue correction of such default or neglect with diligence and promptness, the CONTRACTOR, without prejudice to any other remedy the CONTRACTOR may have hereunder, including the right to declare the SUBCONTRACTOR in default under the SUBCONTRACTOR pursuant to Paragraph Six (6) hereof, make good such deficiencies and may deduct the cost thereof, including CONTRACTOR'S overhead and profit, from any payments then or thereafter due the SUBCONTRACTOR hereunder, or seek reimbursement from the SUBCONTRACTOR therefor.



23. Subcontractor hereby agrees to furnish only such labor, materials, machinery and equipment and to utilize only such subcontractors and supplies as will not delay or interfere with the timely progress and completion of the Project under the Principal Contract, and as will be acceptable to and work in harmony with all other personnel employed on, at or near the Project site, whether by Contractor, Subcontractor or otherwise (including by Owner or any separate contractor of owner on the Project site or at any other site in the vicinity thereof). Subcontractor hereby agrees not to incite, participate in or accede to any cessation of Work which may occur as a result of any labor dispute affecting the Project site or any other site in the vicinity thereof. Should there be a work stoppage of any personnel affecting the Project site, by whomsoever employed, caused by a strike, picketing, boycott or by any voluntary or involuntary cessation of work by employees of Contractor, Subcontractor or any other party on, at or near the Project site or any other site in the vicinity thereof which in the judgment of Contractor will cause or is likely to cause delay in the progress of the Project under the Principal contract, then upon three (3) days' written notice thereof, Contractor shall have the right at any time thereafter to terminate this subcontract, in which event, to the extent that Contractor has not previously done so, Contractor shall pay subcontractor an amount equal to the value of the Work performed hereunder as of the effective date of such termination, based upon the trade payment breakdown submitted by Subcontractor with respect to the Subcontract, and this payment is the Subcontractor's sole entitlement hereunder the Contractor shall have no further obligation or responsibility by reason of such termination. In determining the value of such Work performed, there shall be included only the value of labor, materials and equipment theretofore furnished and delivered by the Subcontractor to the Project site, and such value shall not include any other costs, expenses or other charges, including profit and overhead for unperformed Work with respect to the Project. In such event, Contractor shall also have the right to require that Subcontractor, as a condition of any such payment, assign to Contractor any or all of the subcontracts or purchase orders issued by Subcontractor with respect to its Work hereunder.

ON BEHALF OF SUBCONTRACTOR, I HEREBY ACKNOWLEDGE & ACCEPT THE GENERAL TERMS AND CONDITIONS SET FORTH ON PAGES 1 THROUGH 5 ABOVE:

SUBCONTRACTOR: _JJID INC._

BY _Jimmy Hanlin_ /DATE _6/4/02_

TITLE: _Vice President_

PROJECT NAME: _DAFB Mortuary_ /SC#: _4E6C_



# APPLICATION AND CERTIFICATION FOR PAYMENT

AIA DOCUMENT G702   PAGE ONE OF   PAGES

OWNER:

PROJECT:

TO CONTRACTOR:

VIA ARCHITECT:

APPLICATION NO:

PERIOD TO:

PROJECT NOS:

CONTRACT DATE:

Distribution to:
- [ ] OWNER
- [ ] ARCHITECT
- [ ] CONTRACTOR   CRIS NAUTA
- [ ] MARYANNE SIMONE   PROJECT ACCOUNTANT

CONTRACT FOR:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | |
|---|---|
| ORIGINAL CONTRACT SUM | $ |
| Net change by Change Orders | $ |
| CONTRACT SUM TO DATE (Line 1 ± 2) | $ |
| TOTAL COMPLETED & STORED TO DATE   (Column G on G703) | $ |
| RETAINAGE: | |
| a.   _____ % of Completed Work (Column D + E on G703)   $ | |
| b.   _____ % of Stored Material (Column F on G703)   $ | |
| Total Retainage (Lines 5a + 5b or Total in Column I of G703) | $ |
| TOTAL EARNED LESS RETAINAGE (Line 4 Less Line 5 Total) | $ |
| LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Certificate) | $ |
| CURRENT PAYMENT DUE | $ |
| BALANCE TO FINISH, INCLUDING RETAINAGE (Line 3 less Line 6) | $ |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: _____   Date: _____

State of:
County of:
Subscribed and sworn to before me this ____ day of _____
Notary Public:
My Commission expires:

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED .............. $ _____

(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)
ARCHITECT:

By: _____   Date: _____

This Certificate is not negotiable.  The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | | |
| Total approved this Month | | |
| TOTALS | $0.00 | $0.00 |
| NET CHANGES by Change Order | $0.00 | |

| | |
|---|---|
| | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, DC 20006-5292

AIA DOCUMENT G702 · APPLICATION AND CERTIFICATION FOR PAYMENT · 1992 EDITION · AIA® · ©1992

Users may obtain validation of this document by requesting a completed AIA Document D401 · Certification of Document's Authenticity from the Licensee.

*Exhibit B*

# CONTINUATION SHEET

*AIA DOCUMENT G703*

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT, containing
Contractor's signed certification is attached.

tabulations below, amounts are stated to the nearest dollar.

Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO:

PAGE  OF  PAGES

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | H BALANCE TO FINISH (C - G) | I RETAINAGE (IF VARIABLE RATE) |
|---|---|---|---|---|---|---|---|---|---|
|  | GRAND TOTALS | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.00% | $0.00 |  |

Users may obtain validation of this document by requesting of the license a completed AIA Document D401 - Certification of Document's Authenticity

AIA DOCUMENT G703 · CONTINUATION SHEET FOR G702 · 1992 EDITION · AIA® · © 1992 ·
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5232

G703-1992

JUN 10 2002 5:06PM    HP LASERJET 3200                                      P.2
JUN. 10. 2002. 10:16AM    NASON CONSTRUCTION 302 529 2808         NO. 9266   P. 5

# NASON
CONSTRUCTION, INC.
Builders & Construction Managers

# Exhibit "C", List of Suppliers

**PLEASE NOTE:** This form must be filled out even if you are not using any suppliers. If no suppliers are being used, please indicate by N/A. If suppliers are being used, please complete with all information below.

## COMPLETE MAILING ADDRESS WITH ZIP CODE AND TELEPHONE NUMBERS ARE REQUIRED.

*Please note if all material being used is from your own inventory. In the event you change suppliers, Nason Construction, Inc., must be advised of each change. (If you should need additional space, please use the back of this sheet).*

| # | SUPPLIER'S NAME | MAILING ADDRESS/ZIP CODE | PHONE # |
|---|---|---|---|
| 1 | Gillespe & Son Inc | 100 Dixon Drive Chestertown MD 21620 | 1-800-638-6854 |
| 2 | J.T. Seely & Co Inc | 1220 Valley Forge PA 19482 | 610-933-5420 |
| 3 | Aqua Flow Pumps & Supply | 1501 Polaski Highway Bear DE 19701 | 302-834-811 |
| 4 | Tri Con Delaware Inc | PO 858 Dover DE 19903 | 302-735-9850 |
| 5 | Binder Materials | PO Box 73261 Chicago Ill 60673 | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |

JOB NAME: _New Mortuary_

COMPANY NAME: _JJID_
(Please Print)

DATE: _6/10/02_

EXECUTED BY: _X_____
(Must be an officer of your company)

TITLE: _Vice President_

**_FAILURE TO COMPLY WITH THIS INFORMATION MAY RESULT IN DELAY OF PAYMENT._**



# CERTIFICATE OF INSURANCE

DATE (MM/DD/YY)

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|
| ABC INSURANCE AGENCY | |

COMPANIES AFFORDING COVERAGE

| COMPANY A | XYZ INSURANCE COMPANY |
|---|---|
| INSURED | COMPANY B |
| DEF CONTRACTOR | COMPANY C |
| **Exhibit D** | COMPANY D |

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| TYPE OF INSURANCE | POLICY NUMBER | POLICY EFF. DATE (MM/DD/YY) | POLICY EXP. DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|
| **GENERAL LIABILITY** | | | | GENERAL AGGREGATE | 2000000 |
| X COMM. GENERAL LIABILITY | POLICY # | DATE | DATE | PROD-COMP/OP AGG. | 1000000 |
| CLAIMS MADE X OCCUR | | | | PERS. & ADV. INJURY | 1000000 |
| OWNER'S & CONTRACT'S PROT | | | | EACH OCCURRENCE | 1000000 |
| X PER PROJECT | | | | FIRE DAMAGE (Any one fire) | 50000 |
| X END'T INCL | | | | MED EXP (Any one person) | 5000 |
| **AUTOMOBILE LIABILITY** | | | | COMBINED SINGLE LIMIT | 1000000 |
| X ANY AUTO | POLICY # | DATE | DATE | | |
| ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | |
| SCHEDULED AUTOS | | | | | |
| X HIRED AUTOS | | | | BODILY INJURY (Per accident) | |
| X NON-OWNED AUTOS | | | | | |
| | | | | PROPERTY DAMAGE | |
| **GARAGE LIABILITY** | | | | AUTO ONLY-EA ACCIDENT | |
| ANY AUTO | | | | OTHER THAN AUTO ONLY: | |
| | | | | EACH ACCIDENT | |
| | | | | AGGREGATE | |
| **EXCESS LIABILITY** | | | | EACH OCCURRENCE | 2000000 |
| X UMBRELLA FORM | POLICY # | DATE | DATE | AGGREGATE | 2000000 |
| OTHER THAN UMBRELLA FORM | | | | | |
| **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | | | X STATUTORY LIMITS | |
| THE PROPRIETOR/ PARTNERS/EXECUTIVE OFFICERS ARE: INCL EXCL | POLICY # | DATE | DATE | EACH ACCIDENT | 1000000 |
| | | | | DISEASE-POLICY LIMIT | 5000000 |
| | | | | DISEASE-EACH EMPL. | 1000000 |
| **OTHER** | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS

Nason Construction, Inc., and the Department of the Army Corp District, Corps of Engineers and Dover Air Force Base, Mortuary, Dover, Delaware are to be named as additional insureds for work performed at DAFB, Dover, Delaware.                NC #4860

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| NASON CONSTRUCTION, INC. 2000 FOULK ROAD SUITE F WILMINGTON DE 19810 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES. |
| | AUTHORIZED REPRESENTATIVE |

ACORD 25-S (3/93)

JUN 10 2002 5:06PM  HP LASERJET 3200
JUN. 10. 2002 10:16AM  NASON CONSTRUCTION 302 529 2808  NO. 9266  P. 6  P. 3

## Exhibit E



**NASON CONSTRUCTION, INC.**
**SAFETY SITE POLICY**

### SAFETY SITE POLICY FOR DAFB PORT MORTUARY PROJECT

All Contractors on this project shall comply with the following site policy. Failure to comply with these requirements may result in removal from the job site.

- Hard hats <u>ARE REQUIRED AT ALL TIMES</u>. Enclosed ceilings do not change this requirement.

- No tank tops, muscle shirts, etc. Shirts shall have a minimum of 4" sleeves. Long pants only. No shorts, cut-offs, sweatpants or similar type apparel

- Heavy duty leather work boots with steel or composite toes must be worn at all times.

- Eye protection <u>IS REQUIRED</u> for any activity that has a potential for eye injury.

- No radios, CD players, walkman or similar sound systems. This includes parking vehicles in the work area and playing the radio or CD player. A radio may be kept in the field offices.

- All work at elevations of 6 feet or greater shall require fall protection. EXCEPTIONS: Working from ladders, work from scaffolds is 10 feet and steel erection 15 feet and 30 feet.

- No individual shall be under the influence or in possession of alcoholic beverages or controlled substances, to include vehicles.

- No work is to be performed without a Nason Construction supervisor on site.

- No firearms or similar weapons are prohibited, to include inside vehicles.

- All EM 385-1-1 and OSHA regulations applicable to work or trade shall be followed.

- Housekeeping shall be preformed daily.

- Once on site, all construction personnel must remain on site until the end of the work day.

**PROJECT NAME: <u>DAFB PORT MORTUARY</u>**   **NASON PROJECT #: <u>4860</u>**

**WORKER ACKNOWLEDGEMENT:** _____ X 6/10/02
/(Date)

REV. 04/03/02



| Act ID | Orig Dur | Rem Dur | Early Start | Early Finish | Total Float | RESP | Activity |
|---|---|---|---|---|---|---|---|
| **35% Design Phase (4 February - 21 March)** | | | | | | | |
| 100 | 0 | 0 | 04FEB02A | 04FEB02A | | COE | ◆ Notice to Proceed |
| 160 | 33 | 27 | 04FEB02A | 20MAR02A | | ARCH | 35% Design |
| 360 | 23 | 33 | 04FEB02A | 04FEB02A | | ARCH | 100% Demolition Drawings |
| 300 | 20 | 23 | 04FEB02A | 04MAR02A | 0001A | ARCH | |
| 660 | 20 | 20 | 21FEB02A | 21FEB02A | 0001A | ARCH | Outline Specification |
| 370 | 5 | 20 | 27FEB02A | 27FEB02A | 0001A | ARCH | Site Survey |
| 140 | 30 | 5 | 26FEB02A | 20MAR02A | 0001A | ARCH | 100% Demolition Drawing Review/Approval |
| 560 | 10 | 30 | 07MAR02A | 25MAR02A | 0001A | COE | 100% Structural Steel Design |
| 450 | 15 | 10 | 08MAR02A | 12APR02A | 0001A | EENG | Site Geotech |
| 210 | 0 | 15 | 21MAR02A | 12APR02A | 0001A | EENG | 15% Design |
| 130 | 30 | 0 | 15APR02A | 10MAY02 | 0001A | SIENG | 100% Foundation Design |
| 490 | 10 | 30 | 22APR02A | 26APR02A | 0001A | ARCH | Environmental Study |
| **95% Design Phase (4 February - 25 April)** | | | | | | | |
| 680 | 50 | 67 | 29APR02A | | 0001A | ARCH | |
| 650 | 10 | 53 | 04FEB02A | 04JUN02 | -1 | ARCH | 100% MEP Design |
| 810 | 25 | 10 | 25MAR02A | 05APR02A | | ARCH | Dimension Drawings |
| 250 | 10 | 25 | 25MAR02A | 24APR02A | | ARCH | 95% Design |
| 640 | 10 | 10 | 01APR02A | 24APR02A | | ARCH | Details / Cross Sections |
| 670 | 10 | 10 | 08APR02A | 10APR02A | | ARCH | Building Elevations |
| 620 | 5 | 100 | 11APR02A | 24APR02A | | ARCH | Submit 95% Design |
| 870 | 10 | 100 | 16APR02A | 24APR02A | | ARCH | Finish / Material Schedules |
| **100% Design Phase (4 February - 4 June)** | | | | | | | |
| 580 | 27 | 100 | 01FEB03 | | | | Complete Design Specifications |
| 580 | 27 | 100 | 20JUN03 | | | | 100% Building Envelope / Roof Design |
| 270 | 0 | | 29APR02 | | | | |

Start Date 01FEB02
Finish Date 20JUN03
Data Date 29APR02
Run Date 17MAY02 10:00

© Primavera Systems, Inc.

Early Bar
Target Bar
Progress Bar
Critical Activity

Dover Air Force Base
Mortuary Affairs Building
Progress Payment #2 Update
EXHIBIT G, SCHEDULE

Sheet 1 of 8

| Date | Revision | Checked/Approved |
|---|---|---|

NASON
CONSTRUCTION, INC.
Builders & Construction Managers

| Activity ID | Orig Dur | % | Early Start | Early Finish | Total/RMRK Float | BID# | RESP |
|---|---|---|---|---|---|---|---|
| **Owner Design Review/Approval** | | | | | | | |
| 630 | 28 | 28 | 29APR02 | 04JUN02 | -1 | 0001A | ARCH |
| 620 | 29 | 7 | 29APR02 | 04JUN02 | -1 | 0001A | ARCH |
| 600 | 18 | 18 | 10MAY02 | 04JUN02 | -1 | 0001A | ARCH |
| 330 | 0 | 0 | 05JUN02 | | -1 | 0001A | ARCH |
| 190 | 11 | 11 | 25MAR02A | 05APR02A | 0 | 0001B | D/BC |
| 280 | 10 | 10 | 25APR02 | 09MAY02 | -1 | 0001B | COE |
| 700 | 10 | 10 | 25APR02 | 09MAY02 | 17 | 0001A | COE |
| 600 | 10 | 0 | 29APR02 | 10MAY02 | 16 | 0001A | COE |
| 590 | 10 | 0 | 13MAY02 | 24MAY02 | 6 | 0001A | COE |
| 610 | 10 | 0 | 13MAY02 | 24MAY02 | 6 | 0001A | COE |
| 340 | 11 | 0 | 04JUN02 | 18JUN02 | 0 | 0001A | COE |
| 720 | 10 | 0 | 05JUN02 | 18JUN02 | 43 | 0001A | COE |
| **Bid & Award** | | | | | | | |
| 800 | 10 | 100 | 25MAR02A | 05APR02A | | 0001B | D/BC |
| 380 | 15 | 73 | 08APR02 | 02MAY02 | 16 | 0001B | D/BC |
| 400 | 15 | 47 | 22APR02 | 09MAY02 | 12 | 0001B | D/HC |
| 570 | 45 | 03 | 03MAY02 | 04JUL02 | 16 | 0001B | S1EE |
| 420 | 20 | 0 | 10MAY02 | 05JUN02 | 71 | 0001B | D/BC |
| 240 | 0 | 0 | 13MAY02 | | 0 | | M6CH |
| 610 | 10 | 0 | 13MAY02 | 24MAY02 | 6 | 0001A | D/BC |
| 340 | 11 | 0 | 04JUN02 | 18JUN02 | 0 | 0001A | D/BC |
| 390 | 20 | 0 | 20MAY02 | 14JUN02 | 0 | 0001B | D/BC |
| 460 | 30 | 0 | 05JUN02 | 18JUL02 | 43 | 0001B | D/BC |
| **Pre-Construction Submittals** | | | | | | | |
| 1050 | 0 | 100 | 01FEB02A | | | 0001B | D/BC |



Dover Air Force Base
Mortuary Affairs Building
Progress Payment #2 Update

Chart bar labels:
- Acquisition of Bond
- 35% Design Review/Approval
- Submit 95% Design
- Input 95% design review comments
- 100% Design
- Finalize Finishes
- 95% Design Review/Approval
- 100% Building Envelope / Roof Review/Approval
- 100% Structural Steel Design Review/Approval
- 100% Foundation Design Review/Approval
- 100% Civil Design Review/Approval
- 100% Design Review/Approval
- 100% MEP Design Review/Approval
- Bid & Award Demolition
- Bid & Award Structural Steel
- Bid & Award Site
- Detail/Fabricate Structural Steel
- Order Mechanical/Electrical Equipment
- Bid & Award Building Envelope & Roof
- Bid & Award Concrete
- Bid & Award General Trades

Legend:
- Early Bar
- Target Bar
- Progress Bar
- Critical Activity

| Start Date | 01FEB02 |
|---|---|
| Finish Date | 20JUN03 |
| Data Date | 29APR02 |
| Run Date | 11MAY02 10:00 |

Sheet 2 of 8

| Date | Revision | Checked/Approved |
|---|---|---|

© Primavera Systems, Inc.

NASON CONSTRUCTION, INC.
Builders & Construction Managers

**Sld Consltuction Phase I - South End of Site**

| Activity ID | Orig Dur | % | Early Start | Early Finish | Total/WRKP Float | BID | RESP |
|---|---|---|---|---|---|---|---|
| 400 | 30 | 100 | 18FEB02A | 12APR02A | | | ARCH |
| 770 | 0 | 100 | 20FEB02A | | | | D/BC |
| 830 | 2 | 100 | 21FEB02A | 21FEB02A | | | D/BC |
| 440 | 0 | 100 | 22FEB02A | | | | D/BC |
| 200 | 10 | 100 | 25FEB02A | 13MAR02A | | | COE |
| 500 | 0 | 100 | 25FEB02A | | | | D/BC |
| 710 | 0 | 100 | 13MAR02A | | | | D/BC |
| 730 | 10 | 100 | 13MAR02A | 29MAR02A | | | COE |
| 220 | 0 | 100 | 14MAR02A | | | | D/BC |
| 760 | 0 | 100 | 15MAR02A | | | | D/BC |
| 780 | 0 | 100 | 19MAR02A | | | | D/BC |
| 790 | 10 | 100 | 19MAR02A | 09APR02A | | | COE |
| 470 | 0 | 100 | 09APR02A | | | | COE |
| 1220 | 0 | 100 | 22MAR02A | | | | D/BC |
| 530 | 10 | 100 | 15APR02A | 02MAY02A | 1 | | COE |
| 510 | 0 | 100 | 29APR02A | | -4 | | COE |
| 520 | 10 | 100 | 29APR02A | 10MAY02A | 0 | | D/BC |
| 690 | 0 | 100 | 07MAY02A | | 0 | | D/BC |
| 350 | 10 | 100 | 07MAY02A | 20MAY02A | 10 | | D/BC |
| 850 | 5 | 60 | 10APR02A | 30APR02A | 18 | 000 1B | |
| 750 | 5 | 100 | 10APR02A | 12APR02A | 2 | 000 1B | |
| 740 | 15 | 50 | 15APR02A | 08MAY02A | | 000 1G | |

Gantt chart activity labels (2002–2003):
- Submit Design Schedule
- Transition Meeting
- Submit/Interim CQC Plan
- Submit Interim CQC Plan Review/Approval
- Submit Preliminary Project Schedule
- Submit Accident/Hazard/Safety Plan
- Accident/Hazard/Safety Plan Review/Approval
- Preliminary Meeting
- Submit Initial Project Schedule
- Submit Design Quality Control (DQC)
- Design Quality Control (DQC) Review/Approval
- Contractor Quality Management (CQM) Training
- Pre Construction Safety Meeting
- Soil & Sediment Control Plan Review/Approval
- Submit Quality Control Manual
- Quality Control Manual Review/Approval
- Submit Final CQC Plan
- Final CQC Plan Review/Approval
- Mobilization
- Construction Fence
- Relocate Building #112
- Soil & Sediment Control Plan

Legend:
- Early Bar
- Target Bar
- Progress Bar
- Critical Activity

| | |
|---|---|
| Start Date | 01FEB02 |
| Finish Date | 20JUN03 |
| Data Date | 29APR02 |
| Run Date | 1/MAY02 10:00 |

© Primavera Systems, Inc.

**Dover Air Force Base**
**Mortuary Affairs Building**
**Progress Payment #2 Update**

Sheet 3 of 8    Date    Revision    Checked/Approved

**NASON** CONSTRUCTION, INC.
Builders & Construction Managers

© Primavera Systems, Inc.

| Activity ID | Orig Dur | % | Early Start | Early Finish | Total Float | BID | RESP |
|---|---|---|---|---|---|---|---|
| **Building Construction** | | | | | | | |
| 430 | 30 | 30 | 16APR02A | 16APR02A | 10 | 0001D | D/HC |
| 410 | 3 | 100 | 15APR02A | 16APR02A | | 0001D | D/HC |
| 860 | 5 | 50 | 22APR02A | 01MAY02 | | 0001D | D/HC |
| 550 | 5 | 15 | 22APR02A | 22APR02A | / | 0001H | D/HC |
| 1630 | 15 | 0 | 29APR02 | 02MAY02 | 2/ | 0001H | D/HC |
| 1970 | 15 | 0 | 17MAY02 | 17MAY02 | 10 | 0001H | ELEC |
| 1140 | 15 | 0 | 10MAY02 | 30MAY02 | 1 | 0001H | D/HC |
| 540 | 15 | 0 | 13MAY02 | 31MAY02 | 0 | 0001D | D/HC |
| 840 | 10 | 0 | 27MAY02 | 07JUN02 | 0 | 0001D | D/HC |
| 870 | 25 | 0 | 10JUN02 | 12JUL02 | 2 | 0001D | D/HC |
| 880 | 10 | 0 | 08JUL02 | 19JUL02 | 2 | 0001C | D/HC |
| 900 | 5 | 0 | 22JUL02 | 26JUL02 | 7 | 0001C | D/HC |
| 930 | 5 | 0 | 22JUL02 | 26JUL02 | 7 | 0001C | ELEC |
| 940 | 5 | 0 | 22JUL02 | 26JUL02 | 2 | 0001C | D/HC |
| 910 | 5 | 0 | 29JUL02 | 02AUG02 | 2 | 0001C | D/HC |
| 960 | 10 | 0 | 05AUG02 | 16AUG02 | 2 | 0001D | D/HC |
| 920 | 5 | 0 | 19AUG02 | 23AUG02 | 2 | 0001C | D/BC |
| 950 | 5 | 0 | 19AUG02 | 23AUG02 | 5 | 0001C | D/BC |
| 970 | 3 | 0 | 26AUG02 | 28AUG02 | 2 | 0001C | D/BC |
| 980 | 0 | 0 | 02SEP02* | | | 0001C | D/BC |
| 1140 | | | | | | | |
| 1240 | 5 | 0 | 10JUN02 | 14JUN02 | 0 | 0001B | D/BC |
| 990 | 30 | 0 | 17JUN02 | 26JUL02 | 0 | 0001B | D/BC |



Dover Air Force Base
Mortuary Affairs Building
Progress Payment #2 Update

Install Project & Safety Signs
Establish F&S
Pre-Demo Abatement
Relocate Primary
Remove & Dispose of PCB contaminated soil
Site Clearing / Demo
Building Pad Preparation
Site Cut/Fill
Site Utilities
Curbing
Sub-base
Site Lighting
Sidewalks
Binder
Landscaping
Top Paving
Signage
Stripling
South End Sitework Complete
Building Layout
Excavation & Footings
Buildings 105, 105, 112, 111 Demolition

Start Date    01FEB02
Finish Date   20JUN03
Data Date     29APR02
Run Date      17MAY02 10:00

Early Bar
Target Bar
Progress Bar
Critical Activity

Sheet 4 of 6
Date    Revision    Checkep/Approve

NASON
CONSTRUCTION, INC.
Builders & Construction Managers

| Activity ID | Orig Dur | Rem Dur | Early Start | Early Finish | Total Float | | DNFM |
|---|---|---|---|---|---|---|---|
| 1170 | 10 | 0 | 15JUL02 | 28JUL02 | 0 | 0001B | D/BC |
| 1010 | 20 | 0 | 29JUL02 | 23AUG02 | 0 | 0001C | D/BC |
| 1150 | 10 | 0 | 19AUG02 | 30AUG02 | 0 | 0001D | D/BC |
| 1020 | 10 | 0 | 02SEP02 | 13SEP02 | 0 | 0001D | D/BC |
| 1180 | 20 | 0 | 02SEP02 | 27SEP02 | 0 | 0001D | MECH |
| 1030 | 35 | 0 | 16SEP02 | 01NOV02 | 0 | 0001D | |
| 1060 | 40 | 0 | 16SEP02 | 08NOV02 | 0 | 0001D | |
| 1090 | 3 | 0 | 24SEP02 | 26SEP02 | 1 | 0001D | |
| 1190 | 10 | 0 | 30SEP02 | 11OCT02 | 0 | 0001C | |
| 1200 | 5 | 0 | 14OCT02 | 18OCT02 | 0 | 0001C | |
| 1230 | 60 | 0 | 14OCT02 | 03JAN03 | 0 | 0001B | ELEC |
| 1260 | 60 | 0 | 14OCT02 | 03JAN03 | 0 | 0001B | MECH |
| 1650 | 60 | 0 | 14OCT02 | 03JAN03 | 30 | 0001B | MECH |
| 1120 | 30 | 0 | 21OCT02 | 29NOV02 | 0 | 0001D | |
| 1040 | 20 | 0 | 04NOV02 | 29NOV02 | 15 | 0001B | |
| 1620 | 10 | 0 | 11NOV02 | 22NOV02 | 84 | 0001B | |
| 1070 | 30 | 0 | 18NOV02 | 27DEC02 | 59 | 0001B | D/BC |
| 1410 | 25 | 0 | 02DEC02 | 03JAN03 | 5 | 0001B | COE |
| 1400 | 15 | 0 | 02DEC02 | 20DEC02 | 20 | 0001K | ELEC |
| 1470 | 15 | 0 | 02DEC02 | 27DEC02 | 15 | 0001K | |
| 1270 | 40 | 0 | 02DEC02 | 24JAN03 | 29 | 0001B | D/BC |
| 1990 | 5 | 0 | 02DEC02 | 06DEC02 | 64 | 0001B | D/BC |
| 1130 | 10 | 0 | 02DEC02 | 13DEC02 | | 0001B | D/BC |

Piers, Structural Steel, Steel Joists, Metal Deck, Underslab Utilities, Exterior CMU / Brick, Metal Roofing, Slab on Grade, Elevated Slab, Interior Layout, Electrical Rough-In, Mechanical Rough-In, Plumbing Rough-In, Exterior Metal Panel Siding, Metal Wall Framing, Lightning Protection, Exterior Glazing/Clearstory Windows, Telephone/Data, PA System, Install Overhead Doors & Fire Shutters, Sprinkler Rough-In, Install Dock Levelers, Roof Blocking/Curbing

Month scale: J FEB MAR APR MAY JUN JUL AUG SEP OCT NOV DEC JAN FEB MAR APR MAY JUN

Legend:
Start Date: 01FEB02
Finish Date: 20JUN03
Data Date: 29APR02
Run Date: 17MAY02 10:00
Early Bar / Target Bar / Progress Bar / Critical Activity

Sheet 5 of 8    Date    Revision    Checked/Approved

Dover Air Force Base
Mortuary Affairs Building
Progress Payment #2 Update

© Primavera Systems, Inc.

NASON CONSTRUCTION, INC.
Builders & Construction Managers

| Activity ID | Orig Dur | % | Early Start | Early Finish | Total/WRKP Float | BIDI | RESP | Activity |
|---|---|---|---|---|---|---|---|---|
| 1080 | 10 | 0 | 02DEC02 | 13DEC02 | 69 | 0001B | D/BC | Doors/Frames/Hardware |
| 1350 | 20 | 0 | 02DEC02 | 27DEC02 | 69 | 0001B | D/BC | Exterior Louvers |
| 1670 | 25 | 0 | 13DEC02 | 16JAN03 | 31 | 0001B | MECH | Duct & Plumbing Insulation |
| 1210 | 5 | 0 | 16DEC02 | 20DEC02 | 64 | 0001B | MECH | Set Rooftop Units |
| 1090 | 10 | 0 | 16DEC02 | 27DEC02 | 69 | 0001B | D/BC | Gutters & Downspouts |
| 1250 | 30 | 0 | 16DEC02 | 31JAN03 | 0 | 0001D | D/BC | Close-in walls |
| 1720 | 15 | 0 | 23DEC02 | 10JAN03 | 0 | 0001D | ELEC | Install CCTV surveillance system |
| 1710 | 5 | 0 | 23DEC02 | 03JAN03 | 5 | 0001J | MECH | Install exhaust hood in receiving |
| 2000 | 5 | 0 | 30DEC02 | 03JAN03 | 20 | 0001J | MECH | Install Air Curtains |
| 1160 | 10 | 0 | 30DEC02 | 10JAN03 | 59 | 0001KK | D/BC | Racks/Material Handling Equipment |
| 1430 | 10 | 0 | 27JAN03 | 07FEB03 | 39 | 0001B | D/BC | Caulking |
| 1310 | 20 | 0 | 27JAN03 | 21FEB03 | 29 | 0001B | D/BC | Ceiling Grid |
| 1280 | 20 | 0 | 13JAN03 | 07FEB03 | 0 | 0001B | D/BC | Finish Sprinkler |
| 1600 | 10 | 0 | 06JAN03 | 17JAN03 | 10 | 0001D | D/BC | Locker / Toilet Partitions |
| 1330 | 25 | 0 | 10FEB03 | 14MAR03 | 0 | 0001B | ELEC | Finish Electrical |
| 1300 | 30 | 0 | 03FEB03 | 14MAR03 | 0 | 0001B | MECH | Finish Mechanical |
| 1290 | 30 | 0 | 03FEB03 | 14MAR03 | 0 | 0001B | D/BC | Wall Finishes |
| 1420 | 20 | 0 | 17FEB03 | 14MAR03 | 0 | 0001B | D/BC | Flooring |
| 1340 | 20 | 0 | 17FEB03 | 14MAR03 | 0 | 0001B | D/BC | Ceramic Tile / Specialty Flooring |
| 1780 | 5 | 0 | 24FEB03 | 28FEB03 | 24 | 0001S | MECH | Install 3 Retractable Hoses |
| 1810 | 5 | 0 | 24FEB03 | 28FEB03 | 24 | 0001U | D/BC | Install Washer/Sterilizer |
| 1930 | 1 | 0 | 24FEB03 | 24FEB03 | 28 | 0001GG | D/BC | Install garment press |
| 1730 | 10 | 0 | 24FEB03 | 07MAR03 | 29 | 0001M | MECH | Install cold storage room |

Start Date
Finish Date
Data Date    17MAR02 10:00
Run Date     29APR02

Early Bar
Target Bar
Progress Bar
Critical Activity

Dover Air Force Base
Mortuary Affairs Building
Progress Payment #2 Update

Sheet 6 of 8

Date    Revision    checkepprove.

© Primavera Systems, Inc.

NASON CONSTRUCTION, INC.
Builders & Construction Managers

| Activity ID | Orig Dur | % | Early Start | Early Finish | Total WRKF Float | BID | RESP |
|---|---|---|---|---|---|---|---|
| 1740 | 15 | 0 | 24FEB03 | 14MAR03 | 29 | 0001N | ELEC |
| 1750 | 5 | 0 | 24FEB03 | 28FEB03 | 29 | 0001Q | D/BC |
| 1760 | 5 | 0 | 24FEB03 | 28FEB03 | 29 | 0001Q | D/BC |
| 1770 | 10 | 0 | 24FEB03 | 07MAR03 | 29 | 0001Q | FLEC |
| 1780 | 12 | 0 | 24FEB03 | 11MAR03 | 29 | 0001P | MECH |
| 1820 | 5 | 0 | 24FEB03 | 28FEB03 | 29 | 0001W | MECH |
| 1830 | 5 | 0 | 24FEB03 | 28FEB03 | 29 | 0001U | D/BC |
| 1840 | 15 | 0 | 24FEB03 | 14MAR03 | 29 | 0001Y | D/BC |
| 1850 | 1 | 0 | 24FEB03 | 24FEB03 | 29 | 0001X | D/BC |
| 1870 | 5 | 0 | 24FEB03 | 28FEB03 | 29 | 0001AA | D/BC |
| 1890 | 1 | 0 | 24FEB03 | 24FEB03 | 29 | 0001CC | D/BC |
| 1910 | 1 | 0 | 24FEB03 | 24FEB03 | 29 | 0001EE | D/BC |
| 1920 | 3 | 0 | 24FEB03 | 26FEB03 | 29 | 0001FF | D/BC |
| 1940 | 1 | 0 | 05MAR03 | 05MAR03 | 29 | 0001HH | D/BC |
| 1950 | 8 | 0 | 24FEB03 | 05MAR03 | 29 | 0001II | D/BC |
| 1990 | 1 | 0 | 24FEB03 | 24FEB03 | 29 | 0001MM | MECH |
| 1640 | 25 | 0 | 20FEB03 | 03APR03 | 0 | 0001B | MECH |
| 1320 | 15 | 0 | 03MAR03 | 21MAR03 | 13 | 0001B | D/BC |
| 1880 | 8 | 0 | 08MAR03 | 17MAR03 | 0 | 0001BB | D/BC |
| 1360 | 10 | 0 | 10MAR03 | 21MAR03 | 9 | 0001B | D/BC |
| 1500 | 10 | 0 | 10MAR03 | 21MAR03 | 9 | 0001B | D/BC |
| 1700 | 10 | 0 | 10MAR03 | 19MAR03 | 11 | 0001B | D/BC |
| 1660 | 4 | 0 | 14MAR03 | 19MAR03 | 11 | 0001Z | D/BC |

Install Clothes Dryers In Personal Effects

Install Retractable hoses in embalming

Install safety showers with eye/face wash

Install Track ceiling operating /dental lights

Installation of 20 surgical exam lights

Install washer–extractor

Install one distilled water

Install all mobile autopsy ta

Install electric steam gene

Install Prabology Statio

Install mounted TV Bracke

Install handheld single sho

Install Counterfop eyewash

Install 500lb Ice maker

Install commercial flatwork I

Install clothing conveyors

Install Bio Safety Cabinet

Finish Plumbing

Ceiling Tile

Millwork/Toilet Acces

Punchlist

Wall Guards / FEC

Install Projection Scre

© Primavera Systems, Inc.

Start Date
Finish Date
Data Date
Run Date

01FEB02
20JUN03
28FEB03
17MAY03 10:00

Early Bar
Target Bar
Progress Bar
Critical Activity

Dover Air Force Base
Mortuary Affairs Building
Progress Payment #2 Update

Sheet 7 of 8

Date :    Revision    Check/Approve

NASON
CONSTRUCTION, INC

Builders & Construction Managers

| 2002 | | | | | | | | | | | | 2003 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| J FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN |

| Activity ID | Orig Dur | % | Early Start | Early Finish | Total WKNG Float | BIDI | RESP |
|---|---|---|---|---|---|---|---|
| 1440 | 5 | 0 | 17MAR03 | 21MAR03 | 9 | 0001B | D/BC |
| 1800 | 5 | 0 | 17MAR03 | 21MAR03 | 9 | 0001B | D/BC |
| 1960 | 5 | 0 | 17MAR03 | 21MAR03 | 9 | 0001T | D/BC |
| 1900 | 1 | 0 | 17MAR03 | 17MAR03 | 13 | 00011L | D/BC |
| 2010 | 10 | 0 | 21MAR03 | 03APR03 | 0 | 0001DD | D/BC |
| 1490 | 0 | 0 | 04APR03 | 04APR03 | 0 | 0001B | MECH |
| 1610 | 11 | 0 | 04APR03 | 18APR03 | 0 | 0001B | COE |

**Site Construction Phase II - North End of Site**

| Activity ID | Orig Dur | % | Early Start | Early Finish | Total WKNG Float | BIDI | RESP |
|---|---|---|---|---|---|---|---|
| 1510 | 15 | 0 | 21APR03 | 09MAY03 | 0 | 0001E | D/BC |
| 1590 | 5 | 0 | 12MAY03 | 16MAY03 | 0 | 0001C | D/BC |
| 1660 | 5 | 0 | 15MAY03 | 21MAY03 | 0 | 0001C | D/BC |
| 1540 | 2 | 0 | 19MAY03 | 20MAY03 | 1 | 0001C | D/BC |
| 1680 | 20 | 0 | 19MAY03 | 13JUN03 | 2 | 0001C | D/BC |
| 1530 | 3 | 0 | 22MAY03 | 26MAY03 | 0 | 0001C | D/BC |
| 1570 | 5 | 0 | 27MAY03 | 02JUN03 | 0 | 0001C | ELEC |
| 2020 | 4 | 0 | 27MAY03 | 30MAY03 | 1 | 0001C | D/BC |
| 1520 | 4 | 0 | 02JUN03 | 06JUN03 | 0 | 0001C | D/BC |
| 1580 | 5 | 0 | 09JUN03 | 13JUN03 | 0 | 0001F | D/BC |
| 1110 | 3 | 0 | 09JUN03 | 11JUN03 | 7 | 0001C | D/BC |
| 1550 | 3 | 0 | 16JUN03 | 18JUN03 | 0 | 0001C | D/BC |
| 1560 | 3 | 0 | 18JUN03 | 20JUN03 | 0 | 0001C | D/BC |

Month columns: J FEB MAR APR MAY JUN 2002 JUL AUG SEP OCT NOV DEC JAN FEB MAR APR MAY JUN 2003



Install whiteboards with sliding panels

Demolition of Existing Mortuary

Permanent Chainlink Fence

Site/Courtyard Furnishings

Landscaping

Top Coat Paving

Certificate of Occup

Owner Move-in

Testing & Balancing

Demo/Grad

Site Utiliti

Stone Slt

Curbing

Site Lt

Sidewa

Blind

Interior Glazing

Install Security Cage

Install Prefab Refrige

| Early Bar | | |
|---|---|---|
| Target Bar | | |
| Progress Bar | | |
| Critical Activity | | |

© Primavera Systems, Inc.

Start Date      01FEB02
Finish Date     20JUN03
Data Date       29APR02
Run Date        17MAY02 10:00

Dover Air Force Base
Mortuary Affairs Building
Progress Payment #2 Update

Sheet 8 of 8

| Date | Revision | Checked | Approved |
|---|---|---|---|

**NASON** CONSTRUCTION, INC.
Builders & Construction Managers



## Exhibit "H", Liquidated Damage Clause

NOTE:   <u>SUBCONTRACTOR</u> must provide all labor, material, equipment and supervision as required to meet the applicable activity completion dates indicated on the contract.  Nason Construction Inc., reserves the right to update and adjust this schedule as required throughout the duration of this project.  Please note that there are liquidated damages associated with the principal contract in the amount of <u>FOUR THOUSAND DOLLARS ($4,000.00)</u> per day and they will be assessed to any supplier or subcontractor, which delays the project schedule.

JOB NAME: <u>DOVER AIR FORCE BASE MORTUARY, DOVER DELAWARE</u>

COMPANY NAME: _____ J J D INC _____       DATE: 6/4/02
                                 (Please Print)

EXECUTED BY: _____       TITLE: 6/4/02
              (Must be an officer of your company)

*[handwritten notes:]* JJID not responsible for any acceleration to schedule adjustment unless due to delay by JJID; JJID will expect payment for any acceleration due to schedule adjustment not the fault of JJID.

6/4/02

No Acceleration & Demo Costs

7/26/02

7/26/02

**NASON**

EXHIBIT "L"
DAFB - MORTUARY FACILITY
DOVER, DELAWARE
SITEWORK - SCOPE OF WORK
MAY 17, 2002

The Scope of Work is for Convenience in bidding and shall include but be limited to the following:

1    All work shall be performed in strict accordance with all bidding documents complete, as issued prior to the scheduled bid date, including plans. specifications. sketches. project invitation-to-bid, pre-bid meeting minutes. addenda or bulletins. project schedule and phasing. In the event of any discrepancy between the plans and specifications or any other bid document. the higher quantity or higher value shall be included in the bid.

2    All bidders shall visit the site and familiarize themselves with local conditions. obstructions. means of egress, logistics. etc.

3    Provide all material equipment, labor, supervision. layout. applicable permits and fees. licensing, and incidentals to meet the schedule included within the bid package.

4    Provide safety requirements as per EM 385 Safety & Health Manual and most current OSHA as required for your work. The contractor shall at all times provide for a safe work environment. Additionally, the contractor shall make available and provide a safe means of access at all times, for the Owner. Construction Manager, Architect. Engineer and other contractors.

5    Contractor is responsible at all times for the means and methods of construction including the transporting and unloading of material, equipment, personnel. etc. to and from the work area. Nason Construction must review all means and methods prior to starting construction.

6    Provide complete mobilization and demobilization of equipment. material, and personnel as required by the specifications. schedule and phasing, and project conditions.

7    The contractor is required to remove all trash and debris to the project dumpster and leave their work area in broom clean condition. all as directed by the Construction Manager. Excess material from the work shall be legally disposed of off-site. at the contractors expense, so as to not interfere or encumber the work site, staging area, or work of other contractors.

8    The contractor shall both coordinate and cooperate with the work of other contractors. The contractor shall both schedule and coordinate the furnishing and/or installation of any imbedded items required by the work in a timely fashion. so as to not adversely affect the project schedule.



9    The contractor shall be responsible to thoroughly review the bid documents prior to the date for
     bid. The contractor shall fax in writing to the Construction Manager, 5 days prior to bid, a request f
     clarification to any error or ommission, ambiguity or latent condition that they notice in the bid
     documents. Failure to seek written clarifiction, as noted above, shall not be the basis for any
     increase in the contract sum.

10   The project will be executed in TWO PHASES. Refer to the Project Schedule.
     Nason Construction reserves the right to update the schedule to reflect actual progress. The
     schedule is also subject to change with respect to logic, thus possibly changing the
     sequence of work. Revisions to the schedule will not be a basis for an increase
     in the contract sum.

11   ALL personell entering the site must wear steel tip shoes.

12   ALL personell entering the site must have a valid drivers license. Access onto the base is the
     responsibility of the contractor and their employees. Any lost time or cost thereof is the sole
     responsibility of the contractor. Nason Construction will assist in facilitating access to the base.
     All vehicles entering the site must have a current registration and proof of insurance showing
     the expiration date.

13   This project is subject to liquidated damages in the amount of $4,000/ day. Nason Construction
     will assess damages to contractors delaying the schedule. Notification of assesment of damages
     will be forwarded in writing to the responsible contractor.

14   This project is subject to all requirements of the Davis-Bacon prevailing wage act and will
     require certified payrolls.

15   Bid Bonds as well as Payment and Performance Bonds are not required. However Nason
     reserves the right to request a Payment and Performance Bond. The Contractor, if required
     will be reimbursed for the bond cost.

16   This project has a workforce Minority participation goal of 14.5% and a Female participation
     goal of 6.9%.

17   The contractor shall include in his bid a minimum of 15 % minority participation via,
     Veteran Owned Small Business Concerns, HUBZone Small Business Concerns,
     Small disadvantage Business Concerns or Woman owned Business Concerns.

18   The construction site is adjacent to taxiway Bravo and it is the responsibility of the contractor
     to abide by all Air Force and FAA regulations.



19   The PHASE 1 Demolition has been previously awarded. The scope of that work is as listed below:

> PHASE 1 Demolition scope includes the following demolition notes as umbered on drawing C-1.01:
> 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 22, 26, 27
> Scope also includes "Additional Notes" 1, 2, 3 on drawing C-1.01
>
> In reference to drawing note #25. This contractor is responsible for removing the building slab on grade and foundations. The building relocation will be by others.
>
> Include demolition of scale and scale pit. See attached drawing of existing pit.
>
> The contractor shall backfill and compact the existing foundations and pits after demolition and leave the area leveled off at the existing grade.
>
> In reference to Note #4. This contractor is responsible for removing the asphalt paving and bituminous base course. The stone subbase shall be left in place.
>
> All debris shall be removed from the site and disposed of at a legal dump site.

NOTE: All work not identified above shall be performed by this conractor.

20   GENERAL SCOPE
a) Demolition of all water, sanitary and storm water systems complete.
b) Building demolition, including all mechanical and electrical elements. Disconnects by others.
c) Phase 2 Demolition
d) Furnish and Install all Water, Sanitary, Storm Water, Gas, and Fire Water systems complete.
e) Furnish and install water taps.
f) Earthwork cuts and fills, building pad preparation, preparation of subgrade for paving. All excess material shall be removed from site. Stone base under the slab on grade is by others.
g) Provide box out for concrete slab at outdoor mechanical area.
h) Asphalt paving and stone subbase
j) Concrete sidewaks, curbs and gutters.
k) Striping and signage
l) Erosion and sediment control and maintenance through out the project.
m) Include GENERAL CONSTRUCTION NOTES: G1, G2, G3, G7, G8, G9, G10, G17, G19, G20, G22.
n) Excavate and load 230tons of PCB contaminated soil into trucks. Trucks and disposal off site will be provided by Duffiels Assoc. under a separate contract. This contractor is responsible for providing the required worker and work area safety as per EM385 and OSHA.
o) Footing excavation, backfill and spoil removal is by the concrete contractor.
p) Import (as required) and place topsoil. Sodding, seeding and planting are by others.
q) Furnish and install loading dock sump and pit per dwg. C-111.
r) Furnish and install concrete footings, foundation walls, slab on grade and stone subbase at dumpster enclosure. Masonry is by others.
s) Provide all layout, dewatering and dust control.
t) Fencing, gates and controllers are by others.
u) ALL electrical work is by others.
v) Includes crew downtime due to DAFB security requirements



w) Provide As-built drawings with MONTHLY INVOICE.

x) Additional Project management time for Army Corp. reports and paper work.

**Unit prices required with bid proposal:**

$35.00/hr  Laborer           (Includes all taxes, insurance, fringes, overhead and profit)

$45.00/hr  Equipment Operato   (Includes all taxes, insurance, fringes, overhead and profit)

$6.30/tn    Add/Deduct PCB contaminated soil loaded into container provided by others.

**Bidding Documents include the following:**

All Addendums issued during the bid period

Safety Site Policy for Dover Air Force Base

Statement and Acknowledgement - Form 1413

Activity Hazard Analysis Form

Project Schedule

Prevailing Wage Rates

Exhibit "L" Scope of Work

Specification sections - 00700, 00800, 01000, 01060, 02215, 02220, 02300, 02315, 02316,
02510, 02531, 02630, 02713, 02722, 02741, 02763, 02770.

Drawings - C101, C102, C103, C104, C105, C106, C107, C108, C109, C110, C111, L101
All dated March 21, 2002

**The following documents shall be filled out by the successful bidder within 2 days after award.**

1. The succesful contractor will be required to fill out the Activity Hazard Analysis form and
submit to Nason Construction.

This plan shall be submited to Nason Construction and approved by the Army Corp of Engineer
before any work can begin. Any additional cost associated as a result of the issuance of an
incomplete plan shall be borne by the contractor.

2. Pre-Award Survey

END OF DOCUMENT



EXHIBIT M

## U.S. Department of Labor
### Employment Standards Administration
### Wage and Hour Division

## PAYROLL
(For Contractor's Optional Use; See Instructions, Form WH-347 Inst.)

*Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number.*

NAME OF CONTRACTOR ☐    OR SUBCONTRACTOR ☐

PAYROLL NO. _____    FOR WEEK ENDING _____    PROJECT AND LOCATION _____    PROJECT OR CONTRACT NO. _____

ADDRESS _____

OMB No.: 1215-0
Expires: 03/31/2

| (1) NAME, ADDRESS, AND SOCIAL SECURITY NUMBER OF EMPLOYEE | (2) NO. OF WITHHOLDING EXEMPTIONS | (3) WORK CLASSIFICATION | | (4) DAY AND DATE HOURS WORKED EACH DAY | (5) TOTAL HOURS | (6) RATE OF PAY | (7) GROSS AMOUNT EARNED | (8) DEDUCTIONS | | | (9) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | OT. OR ST. | | | | | FICA | WITH-HOLDING TAX | OTHER | TOTAL DEDUCTIONS | NET WA PAID FOR I |
| | | | O | S | | | | | | | |
| | | | O | S | | | | | | | |
| | | | O | S | | | | | | | |
| | | | O | S | | | | | | | |
| | | | O | S | | | | | | | |
| | | | O | S | | | | | | | |
| | | | O | S | | | | | | | |

We estimate that it will take an average of 56 minutes to complete this collection of information, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding these estimates or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, ESA, U.S. Department of Labor, Room S3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

FORM WH-347, Revised Nov. 1998 — FORMERLY SOL 184 — PURCHASE THIS FORM DIRECTLY FROM THE SUPT. OF DOCUMENTS

Date _____

I, _____

(Name of Signatory Party)                    (Title)

do hereby state:

(1) That I pay or supervise the payment of the persons employed by _____

(Contractor or Subcontractor)                    on the _____

(Building or Work)

; that during the payroll period commencing on the _____

day of _____ , 19___ , and ending the _____ day of _____ , 19___ ,

all persons employed on said project have been paid the full weekly wages earned, that no rebates have been or will be made either directly or indirectly to or on behalf of said

_____

(Contractor or Subcontractor)

from the full weekly wages earned by any person and that no deductions have been made either directly or indirectly from the full wages earned by any person, other than permissible deductions as defined in Regulations, Part 3 (29 CFR Subtitle A), issued by the Secretary of Labor under the Copeland Act, as amended (48 Stat. 948, 63 Stat. 108, 72 Stat. 967; 76 Stat. 357; 40 U.S.C. 276c), and described below:

(2) That any payrolls otherwise under this contract required to be submitted for the above period are correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract; that the classifications set forth therein for each laborer or mechanic conform with the work he performed.

(3) That any apprentices employed in the above period are duly registered in a bona fide apprenticeship program registered with a State apprenticeship agency recognized by the Bureau of Apprenticeship and Training, United States Department of Labor, or if no such recognized agency exists in a State, are registered with the Bureau of Apprenticeship and Training, United States Department of Labor.

(4) That:

(a) ☐ — WHERE FRINGE BENEFITS ARE PAID TO APPROVED PLANS, FUNDS, OR PROGRAMS

In addition to the basic hourly wage rates paid to each laborer or mechanic listed in the above referenced payroll, payments of fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees, except as noted in Section 4(c) below.

(b) ☐ — WHERE FRINGE BENEFITS ARE PAID IN CASH

Each laborer or mechanic listed in the above referenced payroll has been paid, as indicated on the payroll, an amount not less than the sum of the applicable basic hourly wage rate plus the amount of the required fringe benefits as listed in the contract, except as noted in Section 4(c) below.

(c) EXCEPTIONS

| EXCEPTION (CRAFT) | EXPLANATION |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

REMARKS:

| NAME AND TITLE | SIGNATURE |
|---|---|

THE WILLFUL FALSIFICATION OF ANY OF THE ABOVE STATEMENTS MAY SUBJECT THE CONTRACTOR OR SUBCONTRACTOR TO CIVIL OR CRIMINAL PROSECUTION. SEE SECTION 1001 OF TITLE 18 AND SECTION 231 OF TITLE 31 OF THE UNITED STATES CODE.

★U.S. G.P.O.:1997:519-9

Client#: 942                                JJIDINC

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YY)
05/23/02

| PRODUCER | |
|---|---|
| Allied North America Insurance Brokerage Corp. of New York 390 North Broadway Jericho, NY 11753 RECEIVED JUN 0 3 2002 NASON CONSTRUCTION INC. | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |

| INSURED | INSURERS AFFORDING COVERAGE |
|---|---|
| JJID, Inc. 100 Julian Lane Bear, DE 19701 | INSURER A: Zurich American Insurance Group |
| | INSURER B: Zurich American Insurance Group |
| | INSURER C: Gulf Ins. Co. |
| | INSURER D: American Guarantee & Liability I |
| | INSURER E: |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS MADE [X] OCCUR | GLO349532101 | 07/01/01 | 07/01/02 | EACH OCCURRENCE | $1,000,00 |
| | | | | | FIRE DAMAGE (Any one fire) | $100,000 |
| | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | PERSONAL & ADV INJURY | $1,000,00 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [ ] POLICY [X] PRO-JECT [ ] LOC | | | | GENERAL AGGREGATE | $2,000,00 |
| | | | | | PRODUCTS - COMP/OP AGG | $2,000,00 |
| B | AUTOMOBILE LIABILITY [X] ANY AUTO [ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS [X] HIRED AUTOS [X] NON-OWNED AUTOS | BAP349532201 | 07/01/01 | 07/01/02 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,00 |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | GARAGE LIABILITY [ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN EA ACC AUTO ONLY: AGG | $ |
| C | EXCESS LIABILITY [X] OCCUR [ ] CLAIMS MADE [ ] DEDUCTIBLE [X] RETENTION $10000 | CU2855382 | 07/01/01 | 07/01/02 | EACH OCCURRENCE | $2,000,000 |
| | | | | | AGGREGATE | $2,000,000 |
| | | | | | | $ |
| | | | | | | $ |
| D | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | WC349532001 | 07/01/01 | 07/01/02 | [X] WC STATU-TORY LIMITS / OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | $500,000 |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $500,000 |
| | | | | | E.L. DISEASE - POLICY LIMIT | $500,000 |
| | OTHER | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
Mortuary Facility, Dover Air Force Base, Delaware, Contract No.
DACA61-01-C-001, Kent County Job # 1143
Foregoing per policy form. Additional Insured status encompasses General
Liability: Nason Construction, Inc. and Department of the Army Corp
(See Attached Descriptions)

| CERTIFICATE HOLDER | ADDITIONAL INSURED; INSURER LETTER: | CANCELLATION |
|---|---|---|
| Nason Construction, Inc. 2000 Foulk Road, Suite F Wilmington, DE 19810 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

# IMPORTANT

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

## DISCLAIMER

The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon.

## DESCRIPTIONS (Continued from Page 1)

District; Corps of Engineers and Dover Air Force Base, Mortuary, Dover, Delaware